UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILLIAM ERNESTO CHILIN MORALES,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **MELVIN HUMPHREY,** <br><br> **Defendant.** | Civil Action No. 14-1363 (JEB) |

### MEMORANDUM OPINION

Plaintiffs William Ernesto Chilin Morales, Jorge Eduardo Rico Turrubiartes, and Carlos R. Orellana-Murga brought this lawsuit against former employer Melvin Humphrey, seeking unpaid wages from 2012 through 2014. Plaintiffs claim violations of the federal Fair Labor Standards Act, the D.C. Minimum Wage Revision Act, and the D.C. Wage Payment and Collection Law. Defendant now moves for partial summary judgment on the FLSA claim, contending that he does not meet that statute's income requirements. As Plaintiffs correctly point out that the Motion is premature without further discovery, the Court will deny it without prejudice.

### I.      Background

The Court begins with certain background facts that are not in dispute for purposes of this Motion. Humphrey is the owner of low-income apartment units and houses in Washington, D.C. See Mot., Exh. 3 (Declaration of Melvin Humphrey), ¶ 3. As maintenance workers employed by Defendant, Plaintiffs were each paid a flat rate for 8 hours of work per day, 40 hours per week, even though they worked 60 hours per week during 2012-2013, their first year of employment.

1

See Am. Compl., ¶¶ 9-11, 13.  Plaintiffs' hours in 2013-2014 averaged 45 per week for Turrubiartes and Orellano-Murga and 60 per week for Morales.  Id.  Orellana-Murga repeatedly asked for overtime pay and was ultimately fired as a result.  Id., ¶ 12.  Plaintiffs were never paid for the excess hours worked.  Id., ¶ 13.

They filed suit in this court seeking compensatory and statutory damages under both federal and local law.  Id., ¶¶ 21, 24, 28.  Specifically, they set out the following counts:

Count I: Failure and refusal to comply with the D.C. Minimum Wage Revision Act by not paying Plaintiffs overtime wages as required by the Act.  Id., ¶¶ 19, 21.

Count II: Willful violation of Sections 206 and 207 of the FLSA by failing to compensate Plaintiffs at a rate of one and a half times the minimum hourly wage for all hours worked in excess of 40 per week.  Id., ¶¶ 23-24.

Count III: Violation of the D.C. Wage Payment and Collection Law by willfully failing and refusing to properly compensate Plaintiffs for regular and overtime wages.  Id., ¶¶ 27-30.

Defendant has now moved for partial summary judgment on the FLSA count.

**II.     Legal Standard**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, 477 U.S. at 248).  An issue is "genuine" if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," that it believes demonstrate the absence of a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(1)(A); see Celotex, 477 U.S. at 323.

When a motion for summary judgment is under consideration, "the evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849-50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The non-moving parties' opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. They are required to provide evidence that would permit a reasonable jury to find in their favor. See Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movants' evidence is "merely colorable" or "not significantly

probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249-50; see Scott v. Harris, 550 U.S. at 380 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.   Analysis

In moving for partial summary judgment on the FLSA count, Humphrey makes one fundamental argument: his income during fiscal years 2012-2014 was insufficient to trigger the statute's protections for his employees. To analyze this contention, the Court first sets forth the requirements under the Act. After agreeing that Defendant does not preliminarily appear to satisfy the definition for a covered employer, the Court next addresses whether additional discovery is appropriate under Federal Rule of Civil Procedure 56(d).

#### A. Fair Labor Standards Act

Congress enacted the Fair Labor Standards Act of 1938 to eliminate conditions "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). At the same time, however, it wanted to avoid "substantial[] curtail[ment of] employment or earning power." Id. § 202(b). Section 206 sets the guidelines for establishing the minimum wage an employee must be paid, and Section 207 requires overtime payment at one and one-half the regular rate for any additional hours over 40 worked in a single week. Relying on these provisions, Plaintiffs allege that Humphrey's conduct constituted a willful violation of this Act. See Am. Compl., ¶¶ 23-24.

There is a problem with Plaintiffs' logic, however; not all employers are subject to the FLSA. In fact, for the aforementioned sections to apply, the parties agree that an employer like Humphrey – who is subject to "enterprise coverage" liability under the FLSA – must (1) be

engaged in interstate commerce and (2) have "annual gross volume of sales made or business done not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). In his Motion, Humphrey contends that there is no factual dispute that his business falls short of this income threshold.

As evidence, he submits a declaration averring that he is an owner of low-income apartment units and homes in the District, and that his income from the rent collected in these units did not exceed $500,000 in 2012, 2013, or 2014. See Humphrey Decl., ¶¶ 3-4. He also offers his bank statements, which he claims demonstrate that his annual gross volume of business done during 2012-2014 ranged from $384,437.42 to $441,033.87. See Mot., Exh. A (2012 Bank Statements of Melvin Humphrey); Exh. B (2013 Bank Statements of Melvin Humphrey); Exh. C (2014 Bank Statements of Melvin Humphrey). In addition, he further explains that his bank statements are the only records extant that show the rent collected, that he does not engage in any other business activities besides managing these properties, and that the rent collected is his sole income. See Reply, Exh. 1 (Supplemental Declaration of Melvin Humphrey), ¶¶ 3, 5. Defendant did not file tax returns for 2012, 2013, or 2014, and he has no other documentation reflecting income earned in those calendar years besides the bank statements. Id., ¶¶ 4, 6. While these statements were redacted to conceal personal information and spending, they purportedly show all income from Humphrey's properties, including that derived through court proceedings and security deposits. Id., ¶ 7.

As Plaintiffs adduce no facts to contradict Humphrey's showing, the Court agrees with Defendant that, on the record submitted, there is no factual dispute that his income did not meet the annual $500,000 threshold required by the FLSA.

B.  Additional Discovery

Plaintiffs, however, are not yet ready to throw in the towel. Instead, they request additional discovery under Fed. R. Civ. P. 56(d). See Opp. at 7. This Rule provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Such an affidavit "must satisfy three criteria. First, it must outline the particular facts [nonmovants] intend[] to discover and describe why those facts are necessary to the litigation. Second, it must explain why [nonmovants] could not produce [the facts] in opposition to the motion [for summary judgment]. Third, it must show the information is in fact discoverable." Convertino v. U.S. Dep't of Justice, 684 F.3d 93, 99-100 (D.C. Cir. 2012) (internal citations omitted).

There can be no dispute that Plaintiffs satisfy the second prong, as they have no independent access to Humphrey's business records and no discovery has yet taken place in the case. See Minute Order of March 13, 2015 (staying discovery at initial scheduling conference). Defendant nonetheless argues that they fall short on the first and third. With respect to the first, the affidavit must be "stat[ed] with sufficient particularity" to justify the discovery request. See Ikossi v. Dep't. of Navy, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation marks omitted); see also Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (plaintiff must "state with sufficient particularity . . . why discovery [is] necessary," and court may deny [Rule 56(d) motion] if no adequate explanation of facts is given).

6

Under the third prong, the requesting party must show that there is "a reasonable basis to suggest" that the information is discoverable. See Bancoult v. McNamara, 217 F.R.D. 280, 283 (D.D.C. 2003) (ciing Carpenter v. Fed Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999)). In this regard, the party seeking relief under Rule 56(d) must do more than offer "conclusory allegation[s] without any supporting facts to justify the proposition that the discovery sought will produce the evidence required." U.S. ex rel. Folliard v. Gov't Acquisitions, Inc., 880 F. Supp. 2d 36, 41 (D.D.C. 2012) (internal citations omitted), aff'd, 764 F.3d 19 (D.C. Cir. 2014). Rule 56(d), moreover, may not be used to defeat a motion for summary judgment when there is "mere speculation" of evidence not yet discovered. See 11 Moore's Federal Practice, ¶ 56.102 (Matthew Bender 3d Ed.); see also Graham v. Mukasey, 608 F. Supp. 2d 50, 54 (D.D.C. 2009) (plaintiff's hope that additional discovery will create questions of fact is improper use of Rule 56(d)).

Plaintiffs' attorney in this case submitted an affidavit explaining that "Plaintiffs have not had the opportunity to conduct discovery and to procure sufficient discovery materials to present facts essential for purposes of defending against Defendant's Motion." Opp., Exh. 1 (Declaration of Mary Craine Lombardo), ¶ 4. Aside from then saying that the materials "are within Defendant's exclusive control," id., ¶ 5, Lombardo provides no explanation in the affidavit itself of what records she would actually seek in discovery or why she believes they exist. Instead, in a somewhat unorthodox move, she refers to Plaintiffs' Opposition as detailing the specific "defects with the banks statements Defendant attaches to his Declaration . . . and [the] numerous concerns that should be addressed in discovery." Id., ¶ 3. Although this appears to be a case of the cart pulling the horse – *viz*, citing a brief to support a declaration as opposed to the other way around – the Court will nonetheless consider points raised in the Opposition.

In that pleading, Plaintiffs argue that they are entitled to additional discovery because, for example, "[d]iscoverable evidence relating to establishing Defendant's annual gross volume of sales made or business done is not limited to his personal business records." Opp. at 2. Records could include "documents relating to contracts under which Defendant derives [annual gross volume of revenue or business done], tax benefits, security deposits, court proceedings through which unpaid rent was recovered, and investment income." Id. at 6. Indeed, federal regulations governing "[m]ethods of computing annual volume of sales or business" specify that the relevant amount is "[t]he total of the gross receipts from all [the employer's] sales or business." 29 C.F.R. § 779.266(b).

This is sufficient, in the Court's opinion, to preclude summary judgment at this juncture. It would be unfair for Plaintiffs to be cabined by the bank statements alone. If, for example, Humphrey had gross receipts over $500,000, but chose not to deposit them all in the bank, he should not escape liability under the FLSA. It does little to inspire confidence in his testimony, moreover, that he has not filed tax returns in the relevant years. Finally, as the Court stayed discovery at the initial scheduling conference before it had begun, see Minute Order of March 13, 2015, the current ruling does not prejudice Defendant by requiring a second discovery period.

The Court, consequently, believes that foreclosing discovery here would be too restrictive a procedure and that Defendant may have another bite at the summary-judgment apple after he has satisfied Plaintiffs' future requests.

## IV. Conclusion

For the foregoing reasons, the Court will issue an order denying Defendant's Motion for Summary Judgment without prejudice.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: May 29, 2015